IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| PAUL La'MARK LITTLE, #01769422 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv230 |
| CHRISTOPHER HOLMAN, ET AL. | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Plaintiff Paul La'Mark Little, a prisoner confined at the Robertson Unit within the Texas Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Little is complaining that his due process rights were violated by Defendants through several disciplinary cases, one of which was later overturned. Because he has identified no constitutional violation stemming from his disciplinary proceedings, the Court recommends dismissing this case.

**I. Plaintiff Little's Complaint**

Little complains of disciplinary violations after a fellow prisoner was murdered at the Beto Unit. He states the following:

> Sub. Counsel Ms. Hannah of the Beto Unit had notified Little of two disciplinary cases: 6-22-21 case #20210207585 and 6-23-21 2nd case #20210207585. On 6-25-21 while attending the hearing Little learn[ed] of a third case #20210210124. Little had not been procedurally notified of the third case. Hearing examiner Capt. Holman of Beto Unit had ignored Little's rights. However, case #20210210124 had been overturned 31 days after the deadline. Little has convincing proof Warden Cozby of Robertson Unit and Robertson Unit UGI: Ms. Reyes conspired through multiple altered extension dates to prolong the

1

> investigation after the deadline to avoid litigation. Huntsville Grievance Officer: Ms. Riley reviewed the entire matter and is well knowledgeable of the manipulation.

Dkt. #1, pg. 4. Throughout his pleadings, Little explains that he was transferred off the Beto Unit because of these cases/allegations and was placed in restrictive housing.

In his attached memorandum of law, Little explains that on June 18, 2021, at approximately 5:23 pm on the Beto Unit, a murder occurred, (Dkt. #1, pg. 7). Beto Unit personnel "erroneously involved fifteen inmates, while only six of the inmates were confirmed, or had personally confessed to their own involvement to the murder" of another prisoner. Little states that he was "mistakenly involved," due to a poor investigation on behalf of personnel at the Beto Unit.

Little argues that he received "the least amount of due process in his entire disciplinary proceedings" at the Beto Unit and then subsequently during the appeal process at the Robertson Unit. *Id*. Defendant Holman, as Disciplinary Hearing Officer, conducted the hearing on June 25, 2021, at the Beto Unit but ignored all of his rights to present witnesses and documentary evidence—thereby allowing "Hannah to sabotage Little's chances at defending himself solely as a favorable advantage on behalf of the Beto Unit['s] grievance office." *Id*. at pg. 11. Hannah, as counsel substitute, purposely disregarded his witnesses and evidence.

The following Monday, June 28, 2021, personnel at the Beto Unit began transferring all fifteen prisoners to different prison units. He further asserts that his personal property was returned to him on July 8, 2021, and he was "shipped off Beto Unit" on July 9, 2021, and ultimately arrived at the Robertson Unit. *Id*. at pg. 12. Little was placed in restrictive housing.

He began the disciplinary appeal process at the Robertson Unit on July 30, 2021. Prison officials notified him that they required an extension of time in which to investigate his claims concerning "due process errors" occurring during the Beto Unit disciplinary hearing, (Dkt. #1, pg. 7). However, Defendant Reyes intentionally prolonged the investigation—in violation of TDCJ

rules. Ultimately, "the Beto Unit's [disciplinary] case" was overturned, which necessarily demonstrates that his due process rights were violated. However, Little argues that prison officials "fabricated" documents on his disciplinary appeal, intentionally delayed the process, covered up an appeal error, and mislead him during the entire investigation. Little, in conclusion, states the following:

> Little had been deprived of an essential liberty interest[:] a right to be properly notified of charges and call witnesses on his behalf. The defendants had conducted two disciplinary cases without necessary procedural protection and their outrightness [sic] to disregard Little with the least amount of due process had violated plaintiff: Paul La'Mark Little[']s rights and constituted a procedural due process violation under the due process clause of the Fourteenth Amendment to the United States Constitution.

Dkt. #1, pg. 20. Little argues that he was intentionally "targeted" in the murder of the other prisoner. He seeks nominal damages and punitive damages from Defendants for their "[mischievous] acts upon" his rights.

## II. Legal Standards

Under 28 U.S.C. § 1915A, a court shall review any complaint in a civil action wherein a prisoner seeks redress from a governmental entity or officer, or employee of a governmental entity. During its review, the court must identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id*. (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, under section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or

3

baseless facts—and dismiss the complaint. *See Henry v. Kerr Cnty., Texas*, 2016 WL 2344231 *3 (W.D. Tex. May 2, 2016) ("A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.") (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Moreover, a complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is **not** akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

**III. Discussion and Analysis**

As an initial matter, the United States Court of Appeals for the Fifth Circuit has repeatedly rejected section 1983 challenges against counsel substitute's performance, or lack thereof, because a counsel substitute in a disciplinary proceeding does not act under color of state law. *See Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). Accordingly, claims against Defendant Hannah are without merit.

The primary consideration in this case is whether Little has stated or presented the denial of a constitutionally protected liberty interest. He has not—as he identifies only a transfer to the Robertson Unit and placement in restrictive housing stemming from the disciplinary cases. While Little does not explain whether he lost good-time credits, any loss of good-time credits does not save his claims because he is ineligible for mandatory supervision. The lack of the denial of a constitutionally protected liberty interest is fatal to all of his claims.

The procedural protections of the due process clause are triggered only when there has been a deprivation of life, liberty, or property; the pertinent question here is "whether he had a liberty interest that the prison action implicated or infringed." *Toney v. Owens*, 779 F.3d 330, 336 (5th Cir. 2015); *Richardson v. Joslin*, 501 F.3d 415, 418-19 (5th Cir. 2007).

The Fifth Circuit has held that a variety of prison administrative decisions do not create constitutionally protected liberty interests. Punishment consisting of placement in administrative segregation or the loss of the opportunity to earn good time is not enough to trigger due process protections. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). Likewise, the imposition of commissary, and recreation as well as cell restrictions do not implicate due process concerns. *See Antone v. Preschel*, 347 F. App'x 45, 46 (5th Cir. 2009) (unpublished); *Gaona v. Erwin*, 224 F. App'x 327, 328 (5th Cir. 2007); *see also Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)

("We agree that Madison's 30[-]day commissary and cell restrictions as punishment are in fact merely changes in the conditions of confinement and do not implicate due process concerns.").

A prisoner also does not have a protected liberty interest in his custodial classification. *See Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Espinoza v. Benoit*, 108 F. App'x 869, 871 (5th Cir. 2004) (finding that close custody confinement "does not constitute an 'atypical and significant hardship … in relation to the ordinary incidents of prison life.'") (*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

A prison transfer can implicate a protected liberty interest if the prison to which the prisoner is transferred to is significantly more restrictive or harsh than the prior facility. *See Wilkinson v. Austin*, 545 U.S. 209, 214 (2005) (transfer to Ohio "Supermax" facility, which Justice Kennedy described as "more restrictive than any other form of incarceration in Ohio, including on its death row or administrative control units."). Here, however, Little has not alleged—much less shown—that the Robertson Unit is much harsher or more restrictive than his previous unit. Accordingly, Little's transfer to the Robertson unit and placement in restrictive housing—even if a disciplinary case was subsequently overturned—do not present the denial of a constitutionally protected liberty interest. Because he has not identified an infringed liberty interest, his claims about lack of notice, a prolonged investigation, and lack of witnesses are without merit.

Crucially, under certain circumstances, the loss of good time could inflict punishment imposing an atypical and significant hardship upon an inmate—because the loss of such time could result in the denial of a liberty interest in early release from prison. This condition exists where an inmate is eligible for release on mandatory supervision. *See Madison*, 104 F.3d at 768.

Here, however, Little is not eligible for mandatory supervision because of his 2012 convictions for aggravated assault on public servant and aggravated robbery—both of which he is

6

currently imprisoned for. *See* Tex. Gov't Code § 508.149(a)(12) (2001) (explaining that defendants convicted for aggravated robbery are not eligible for mandatory supervision); *see also Hatch v. State*, 958 S.W.3d 811, 813 (Tex.Crim.App. 1997) (explaining that a defendant serving a sentence of an offense of aggravated robbery committed in 1994 is ineligible for release to mandatory supervision).

Even if he had lost good-time credits due to disciplinary violations, Little is not eligible for release onto mandatory supervision under Texas law because he committed the offense of aggravated robbery. Therefore, he has failed to demonstrate that a constitutional violation has occurred. *See Stewart v. Cain*, 308 F. App'x 748, 750 (5th Cir. 2009) (unpublished) ("Because Stewart is ineligible for early release under the Texas mandatory supervision scheme, he has no constitutionally protected interest in previously earned good-time credits."); *Kennebrew v. Amarillo Parole Board*, 2020 WL 7075510, at *3 (N.D. Tex. Dec. 2, 2020) ("In Texas, it is well-settled that only those inmates who are eligible for mandatory supervision have a constitutional expectancy of early release …. and *a protected liberty interest* in the good-time credits that they have earned.") (emphasis added).

The fact that prison officials overturned one his disciplinary cases is of no consequence. First, the Constitution only guarantees due process, not error-free decision making and, second, Little has pleaded no facts indicating that he was harmed. *See Powell v. Officer*, 2013 WL 1208517, at *7 (N.D. Tex. July 12, 2013) ("Any harm that occurred when defendant Owens wrote plaintiff a disciplinary case was cured when that case was overturned by Warden Adams.") (citing *Hyson v. Neubert*, 820 F.Supp. 184, 190-91 (D. N.J. 1993)).

Finally, much of Little's memorandum of law concerns how prison officials failed to follow disciplinary rules and procedures as outlined in the prisoner handbook, (Dkt. #1, pg. 9-15).

He also complains about responses to his grievances and the process for appealing grievances. *Id*. at pg. 18-20. A prisoner does not have a federally protected liberty interest in having his prison grievances resolved to his satisfaction. *Geiger v. Jones*, 404 F.3d 371, 374 (5th Cir. 2005). As Little relies on a legally nonexistent interest, any alleged due process violation arising from his prison grievances is indisputably meritless.  Similarly, the purported failure of TDCJ officials to follow their own prison policies, procedures, or rules is not sufficient to state a civil rights claim. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986).

Little has neither identified a protected liberty interest nor constitutional violation. His lawsuit should be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted. Traditionally, district courts are required to permit a *pro se* plaintiff an opportunity to amend his complaint or claim before dismissing the case. However, giving a Little an opportunity to amend is not necessary if he has pleaded his "best case," such that an amended claim would remain frivolous.  *See Norman v. Tex. Court of Criminal Appeals*, 582 F. App'x 430, 431 (Mem) (5th Cir. 2014) (unpublished); *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009).

Here, a review of Little's initial complaint—wherein he raises claims concerning prison disciplinary infractions resulting in punishments that are not protected-liberty interests—shows that any attempt to amend these claims against these Defendants would still result in the same analysis.  Little has not shown that any attempt to amend this complaint would have resulted in a different analysis. Therefore, the Court declines to afford him an opportunity to amend.

## RECOMMENDATION

Accordingly, it is recommended Plaintiff Little's civil rights lawsuit be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §1915A.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 2nd day of December, 2022.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE